UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America    :
                            :
     v.                     :        File No. 2:99-CR-35
                            :
Travis LaPlant              :

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Papers 40, 41, 42 and 48)

Petitioner Travis LaPlant, proceeding *pro se*, has filed a motion to vacate, set aside, or correct his sentence pursuant to the provisions of 28 U.S.C. § 2255 (Paper 41).  On April 9, 2001, LaPlant was sentenced in this Court to 108 months in prison with three years of supervised release following his plea of guilty to one count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1).  (Papers 37 and 38).  LaPlant's sentence was calculated based, in part, upon his status as a career offender pursuant to the provisions of U.S.S.G. § 4B1.1. LaPlant now informs the Court that one of his prior state felony convictions has been vacated, and argues for re-sentencing on the ground that this conviction was a factor in his designation as a career offender.

The government opposes LaPlant's motion, arguing (1) that the motion is untimely; (2) that equitable tolling should not apply; (3) that § 2255 relief is not available

for technical state law violations; and (4) that even if
LaPlant were to be re-sentenced, he would still qualify
as a career offender.  (Paper 47).  As alternative
relief, and in the event that LaPlant's motion is
granted, the government requests that a revised pre-
sentence report or addendum be provided by the Probation
office "in light of the defendant's continued status as a
career offender."  Id. at 9.  For the reasons set forth
below, I recommend that LaPlant's motion be GRANTED and
that he be re-sentenced.  I also recommend that LaPlant's
re-sentencing include a revised pre-sentence report.[1]

<u>Background</u>

As noted above, on April 9, 2001, LaPlant was
sentenced in this Court to 108 months in prison with
three years of supervised release following his plea of
guilty to one count of distribution of heroin in

---

[1]  Also pending before the Court are LaPlant's
motions to correct sentence (Paper 40), for appointment
of counsel (Paper 42), and  to extend time to file a
reply brief (Paper 48).  Because the motion to correct
sentence asks for the same relief, and on the same
grounds, as LaPlant's § 2255 motion, the motion should be
DENIED as moot.  LaPlant's motion for appointment of
counsel (Paper 42) is DENIED.  LaPlant's motion for
enlargement of time (Paper 48) is GRANTED, and his reply
brief (Paper 49) will be accepted as timely.

violation of 21 U.S.C. § 841(a)(1).  (Papers 37 and 38).
Because LaPlant had prior state felony convictions for
residential burglary and simple assault on a police
officer, he qualified as a career offender under the
Sentencing Guidelines.  Accordingly, LaPlant's total base
offense level was adjusted from 16 to 29.[2]  (Papers 28
and 38).  The Court further found that LaPlant had 33
criminal history points, resulting in a criminal history
category of VI and a guideline imprisonment range of 151
to 188 months.  (Paper 38).  The Court then granted the
government's motion pursuant to Rule 35(b) for a downward
departure "based on substantial assistance to the agreed
upon term of imprisonment of 108 months."  Id.

On January 6, 2004, Judge Kupersmith of the Vermont
District Court granted LaPlant's motion to vacate his
1992 residential burglary conviction, concluding that the
Rule 11 colloquy in LaPlant's change of plea was not in
compliance with Vermont law.  (Paper 41, Attachment).
Specifically, the state court concluded that "the Trial
Court did not attempt to explain the essential elements

---

[2]  The adjusted offense level was initially raised to
32, then lowered 3 levels for acceptance of
responsibility.  (Paper 38).

of the offense to the Petitioner.  Nor did the Court attempt to relate the facts of the case to the law."  Id.

On January 12, 2004, this Court received a letter from LaPlant seeking re-sentencing based upon his vacated state court conviction.  (Paper 40).  On March 10, 2004, LaPlant filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  This Court initially dismissed the § 2255 petition as unnecessary, and ordered the government to respond to the petitioner's letter motion.  (Paper 43).  The government objected to this approach, arguing that the Court had no jurisdiction to re-sentence LaPlant other than through the procedures set forth in § 2255.  (Paper 44).  This Court ultimately agreed with the government's position, and reinstated LaPlant's § 2255 motion, preserving his original filing date.  (Paper 45).  Both parties have now briefed the issues presented in LaPlant's habeas corpus motion. (Papers 47 and 49).

## Discussion

I.  Statute of Limitations

Section 2255 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to include a

4

one-year period of limitations for filing a habeas

petition.  In pertinent part, the statute states:

A 1-year period of limitation shall apply to a
motion under this section. The limitation period shall
run from the latest of:

(1) the date on which the judgment of conviction
becomes final;

(2) the date on which the impediment to making a
motion created by governmental action in violation of the
Constitution or laws of the United States is removed, if
the movant was prevented from making a motion by such
governmental action;

(3) the date on which the right asserted was
initially recognized by the Supreme Court, if that right
has been newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review;
or

(4) the date on which the facts supporting the claim
or claims presented could have been discovered through
the exercise of due diligence.  28 U.S.C. § 2255.

28 U.S.C. § 2255.  In this case, both parties agree that

although LaPlant was sentenced in 2001, the exception

under subsection (4) is applicable.  They disagree,

however, on when the "facts supporting the claim or

claims presented could have been discovered through the

exercise of due diligence."  Id.  LaPlant argues that he

could not have known of his grounds for relief until the

state court vacated his conviction in January, 2004.  The

government counters that LaPlant's limitation period

began when he filed his state court petition for post-
conviction relief on September 6, 2002.

LaPlant's argument is supported by two recent lower
court decisions in this circuit.  In <u>United States v.</u>
<u>Hoskie</u>, 144 F. Supp. 2d 108, 111 (D. Conn. 2001), the
court concluded that "the one-year statute of limitations
starts to run on the date the state convictions are
vacated, not an earlier date when the defendant
discovered the facts forming the basis for the attack on
the state convictions."  In support of its reasoning, the
<u>Hoskie</u> court cited the Second Circuit's holding that
"'defendants who *successfully* attack state convictions
may seek review of federal sentences that were enhanced
on account of such state convictions.'"  144 F. Supp. 2d
at 110 (quoting <u>United States v. Doe</u>, 239 F.3d 473, 475
(2d Cir. 2001)) (emphasis added).

Similarly, in <u>Duran v. United States</u>, 2002 WL
867864, at *8-*9 (S.D.N.Y. May 3, 2003), the court
accepted the defendant's claim, filed within one year of
the state court having vacated his conviction, as timely
under § 2254(4).  The <u>Duran</u> court noted that federal
courts routinely dismiss habeas motions where the

defendant has failed to exhaust his state court remedies, and that to start the federal limitations clock as soon as the defendant begins his challenge in state court would limit federal habeas review to those cases where resolution was reached in state court within one year. Id. (citing Daniels v. United States, 532 U.S. 374 (2001) (defendants cannot attack prior state convictions via § 2255 petition without exhausting remedies in state court)).  The court concluded that such a result would be unfair, particularly in cases where, as here, the defendant exhausted his state court remedies as required, and within a matter of weeks brought his fully-exhausted claim to federal court.  Id. at *9; see also United States v. Gadsen, 332 F.3d 224, 228-29 (4th Cir. 2003).

The government relies upon cases from the First and Eleventh Circuits to support its position.  (Paper 47 at 2-3, citing Brackett v. United States, 270 F.3d 60 (1st Cir. 2001) and Johnson v. United States, 340 F.3d 1219 (11th Cir. 2003)).  In Brackett, the First Circuit conceded that its application of § 2255's limitation period could lead to unjust results, and encouraged courts to employ "safety valves."  270 F.3d at 70.  For

7

example, where state proceedings are commenced before a
federal sentence is imposed, courts might continue the
sentence for a "reasonable period." Id. at 70-71.  The
First Circuit also noted that petitioners could argue for
equitable tolling.  Id. at 71.

The Brackett decision has been criticized within its
own circuit.  For example, in Candelaria v. United
States, 247 F. Supp. 2d 125, 134 n.8 (D.R.I. 2003), the
court noted that the Brackett decision essentially
requires a petitioner to first file a habeas petition in
federal court, and then request a stay while the
challenge to his state convictions proceeds in state
court.  This procedure has "in essence created a perverse
incentive system . . . whereby every prisoner must
petition for relief just in case something happens down
the road.  Thus, rather than streamlining the habeas
system and encouraging only meritorious petitions,"
decisions such as that in Brackett are "likely to
encourage a dramatic increase in the number of habeas
petitions, thereby placing a potentially significant
burden on the judicial system." Candelaria, 247 F. Supp.
2d at 134, n.8 (internal quotation omitted); see also

Brackett v. United States, 206 F. Supp. 2d 183, 184 n.3
(D. Mass. 2002).

In Johnson, the Eleventh Circuit held that the
vacatur of a defendant's prior state conviction is not a
a "fact supporting the claim or claims" under § 2254(4),
since the court would have to "consult an authoritative
legal source" to determine whether the state court
conviction had been vacated.  340 F.3d at 1223.  This
approach is overly formalistic.  "A better and more
realistic analysis of the issue is found in United States
v. Gadsen, 332 F.3d 224, 227 (4th Cir. 2003)."  United
States v. Hicks, 286 F. Supp. 2d 768, 770 (E.D. La. 2003)
(comparing Johnson with Gadsen).  In Gadsen, the Fourth
Circuit found that the critical "fact" with respect to
the operation of the Sentencing Guidelines initially was
the existence of the predicate state court conviction.
332 F.3d at 227.  Consequently, the vacatur of that
conviction was a "relevant 'fact' with respect to the
operation of [the petitioner's] § 2255 claim."  Id.
"[B]y definition, [the petitioner] could not have
'discovered' this 'fact' – that his prior conviction had
been conclusively vacated – until [the vacatur was

final]." Id.

In sum, the case law within this Circuit supports accepting LaPlant's petition as timely. While there is a split of authority in other circuits on this issue, the most practical and realistic approach is to begin the limitations period under § 2254(4) on the date that vacatur of the predicate state court became final. Accordingly, I recommend that the Court accept LaPlant's § 2255 motion as timely and review his claim on the merits.

II. Equitable Tolling

Even if this Court were to accept the government's interpretation of the limitations period under § 2254(4), the Court should nonetheless apply equitable tolling. Equitable tolling may apply in "rare and exceptional circumstances" where "extraordinary circumstances" prevented the defendant from presenting his § 2255 motion on time. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). Here, the fact that a state court conviction has been vacated may, alone, place this case in the category of "rare and exceptional." Moreover, LaPlant exhausted his state court remedies, as required by the Supreme

Court, and moved expeditiously for relief in this Court once the state court issued its order.  As the <u>Duran</u> court concluded when addressing similar facts, "[t]o characterize his motion . . . as untimely in these circumstances would be unfair, and would essentially render void the Second Circuit's pronouncement in <u>Doe</u> that 'defendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions.'" 2002 WL 867864, at *9 (citing <u>Doe</u>, 239 F.3d at 475). LaPlant's § 2255 motion should, therefore, be accepted as timely on grounds of both law and equity.

III.   <u>Availability Of § 2255 Relief</u>

   The government next argues that LaPlant's claim is based upon a technical error of state law, and that such error is not a valid ground for relief under § 2255. This argument is not supported by the existing case law. In <u>Custis v. United States</u>, 511 U.S. 485, 497 (1994), the Supreme Court specifically stated that a prisoner in federal custody may attack state convictions that led to an enhanced federal sentence, and "[i]f [the prisoner] is successful in attacking these state sentences, he may

11

then apply for reopening of any federal sentence enhanced by the state sentences." The Court did not specify the procedure a defendant should use for such an application, but in dissent Justice Souter noted that "the Court does not disturb uniform appellate case law holding that an individual serving an enhanced sentence may invoke federal habeas to reduce the sentence . . . ." Id. at 512 (Souter, J., dissenting). Indeed, several circuits have held that when a federal sentence has been enhanced by a since-vacated state conviction, review may be undertaken pursuant to § 2255. See United States v. LaValle, 175 F.3d 1106, 1108 (9th Cir. 1999); United States v. Pettiford, 101 F.3d 199, 201 (1st Cir. 1999) (affirming district court's conclusion that § 2255 was appropriate vehicle for challenging federal sentence imposed pursuant to 18 U.S.C. § 921)); United States v. Nichols, 30 F.3d 35, 36 (5th Cir. 1994).

Moreover, § 2255 does not limit relief to constitutional or jurisdictional errors. As the First Circuit noted in Pettiford, § 2255 also provides relief when a sentence is "otherwise subject to collateral attack." 101 F.3d at 201. In the Second Circuit, relief

12

is available under § 2255 "for a constitutional error, a lack of jurisdiction in the sentencing court, *or* an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." <u>Graziano v. United States</u>, 83 F.3d 587, 590 (2d Cir. 1996) (emphasis added) (internal quotation marks and citation omitted).

The government argues that the state court's error in this case was not a miscarriage of justice, and cites <u>United State v. Timmreck</u>, 441 U.S. 780 (1979) for the proposition that a guilty plea is not subject to collateral attack when all that can be shown is a formal violation of Rule 11. (Paper 47 at 5). In <u>Timmreck</u>, the arraigning court accepted the defendant's guilty plea but failed to inform him of a special parole term required by statute. Noting the defendant's failure to raise the issue on direct appeal, the Supreme Court held that the Rule 11 violation did not result in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure," and that collateral relief was unavailable. <u>Timmreck</u>, 441 U.S. at 784.

13

In <u>In re Dunham</u>, 144 Vt. 444, 448-49, the Vermont Supreme Court discussed the <u>Timmreck</u> Court's "technical violation" holding, and concluded that not all Rule 11 violations are alike.  The violation in <u>Timmreck</u> amounted to a "failure to describe a detail of the maximum sentence," which under both federal and Vermont law would require a showing of prejudice before collateral review could be considered.  <u>Dunham</u>, 144 Vt. at 448.  In this case, as in <u>Dunham</u>, the violation was of a more serious nature: LaPlant was never explained the elements of his offense, and "the Court [made] no attempt to relate the facts of the case to the law" in violation of Rule 11(f).  (Paper 41, Attachment).

> In <u>McCarthy v. United States</u>, 394 U.S. 459, 466
> (1969), the United States Supreme Court observed
> that "because a guilty plea is an admission of
> *all the elements of a formal criminal charge*, it
> cannot be truly voluntary unless the defendant
> possesses an understanding of the law in
> relation to the facts."  (Emphasis added.)
> Thus, a violation of Rule 11(f) goes directly to
> the voluntariness of the plea as articulated in
> <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969).

<u>Dunham</u>, 144 Vt. at 449.  Consequently, where the defendant was not fully informed of the essential elements of his offense, the Vermont Supreme Court has held that "[t]o allow such a plea to stand would work a

14

complete miscarriage of justice," and that no showing of prejudice is required.  Id. at 451.

It is well established that a guilty plea can be collaterally attacked if it was not knowing and voluntarily.  See United States v. Broce, 488 U.S. 563, 569 (1989).  Moreover, an involuntary guilty plea is "obtained in violation of due process" and is, therefore, an error of constitutional magnitude.  See McCarthy, 394 U.S. at 466.  Accepting the facts as set forth in the state court's decision vacating LaPlant's burglary conviction, the Rule 11(f) violation at LaPlant's change of plea proceeding rendered his guilty plea both unknowing and involuntary.  To allow him to suffer the consequences of that plea would, as the Vermont Supreme Court concluded in In re Dunham, result in a complete miscarriage of justice.  Collateral review is, therefore, appropriate.  See Graziano, 83 F.3d at 590.

Furthermore, the government's reliance upon Timmreck is misplaced, since LaPlant is not using a Rule 11 violation to attack an existing conviction.  He has already undertaken that battle in state court and won. Here, LaPlant is simply asking the Court to review his

sentence based upon the fact that it was based, in part, upon a state court conviction that has since been vacated.  As noted above, the Second Circuit has clearly stated that "defendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions." Doe, 239 F.3d at 475; see also United States v. Cox, 245 F.3d 126, 130-31 (2d Cir. 2001) (appellant entitled to review of federal sentence "which was enhanced on account of a prior conviction that has now been dismissed"). Indeed, "the Sentencing Guidelines make clear that '[w]hen a state court vacates a defendant's prior state conviction,' in certain circumstances, 'the sentence resulting from that conviction may not influence the defendant's criminal history score under the Guidelines.'"  Cox, 245 F.3d at 130 (quoting United States v. Guthrie, 931 F.2d 564, 572 (9th Cir. 1991)). The Second Circuit has endorsed this proposition as making "perfect sense," since it would be "'odd . . . for a federal court to treat as valid a state conviction that no longer exists, even though the conviction is being considered for the limited purposes of federal

sentencing.'"   Id. (quoting Guthrie, 931 F.2d at 572).

Despite the Second Circuit's plain language permitting review of federal sentences in cases such as this, the government argues that the cited cases are inapplicable here.  The government first contends that the review sanctioned in Cox is only applicable if LaPlant's state conviction "'was truly expunged, or was dismissed, on account of constitutional invalidity, innocence or errors of law . . ..'" (Paper 47 at 6 (citing Cox, 245 F.3d at 131)).  The Cox court compared such cases to those where the conviction was set aside or the defendant was pardoned "for reasons unrelated to errors of law, e.g., in order to resolve civil rights or to remove the stigma associated with a criminal conviction." 245 F.3d at 130.  Here, as discussed above, LaPlant's state court conviction was vacated on grounds directly related to errors of law and on the basis of constitutional invalidity.  Consequently, the government's attempt to distinguish Cox from this case is unpersuasive.

The government also argues that Doe does not apply. In Doe, the appellant had informed the sentencing court

that he was filing a motion to vacate a prior state conviction, and had sought a sentencing postponement until that motion was resolved.  239 F.3d at 474.  In upholding the lower court's denial of the sentencing postponement, the Second Circuit reasoned that because the appellant, if successful in state court, could "seek review of federal sentences that were enhanced on account of" the state conviction, he would suffer no prejudice as a result of the lower court's decision.  Id. at 475. While the facts of Doe may not directly parallel those presented here, the holding strongly suggests that collateral review is available in cases where a federal sentence was enhanced by a state court conviction that has since been vacated.

For these reasons, this Court should conclude that LaPlant is entitled to collateral review of his federal sentence pursuant to 28 U.S.C. § 2255.

III.   Re-sentencing

The government next contends that there is no need to re-sentence LaPlant, since he still qualifies as a career offender.  Specifically, the government argues that LaPlant has a third felony conviction, for felony

escape, that can be used in place of the vacated burglary
conviction.  (Paper 47 at 8-9).  In response, LaPlant
argues that replacing one conviction with another would
be unfair, since he "had no reason to challenge [sic]
escape conviction . . . .  For the amount of time it
takes to go through the post-conviction relief process in
state court and the § 2255 process in federal court, the
petitioner would just about have completed his federal
sentence as it stands now."  (Paper 49 at 4-5).  LaPlant
also contends that Vermont's punishment for simple
assault on a police officer has been reduced, and that
this conviction is no longer a "predicate felony" under
the career offender provision in the Sentencing
Guidelines.  Id. at 5.

     These are all matters that may be reviewed by the
Court at re-sentencing.  What is clear in this case is
that LaPlant was sentenced as a career offender due to
two predicate state court convictions.  One of those
convictions has since been vacated.  For the reasons
discussed above, LaPlant is entitled to habeas corpus
relief and should be re-sentenced.  The details of that
sentence, and consideration of whether LaPlant still

qualifies as a career offender, should be addressed in full by the government, the Probation Department and LaPlant's appointed counsel, and ultimately decided by the Court at re-sentencing.  Accordingly, I recommend that LaPlant's § 2255 petition be GRANTED, and that the Court request that a revised pre-sentence report be prepared in advance of LaPlant's re-sentencing.

<u>Conclusion</u>

For the reasons set forth above, I recommend that LaPlant's habeas corpus motion, filed pursuant to 28 U.S.C. § 2255, be GRANTED.  I further recommend that the government's request for alternative relief be GRANTED, and that the Court require the Probation Department to prepare a revised pre-sentence report prior to LaPlant's re-sentencing.  Also, LaPlant's motion to correct sentence (Paper 40) should be DENIED as moot.  Finally, LaPlant's motion for appointment of counsel (Paper 42) is DENIED, and his motion for enlargement of time (Paper 48) is GRANTED.

Dated at Burlington, in the District of Vermont, this 14th day of January, 2005.

/s/ Jerome J. Niedermeier

20

Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).